IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DERRICK HOWARD, an individual; DELANA A. HUNTLEY, on behalf of ALISHA SEBASTIAN, a minor child; and TIFINI STRATTON, an individual, ) ) ) ) ) | |
| Plaintiffs, ) ) | Case No. CV04-202-S-EJL |
| vs. ) | MEMORANDUM ORDER |
| GAYLE YAKOVAC, individually and in her official capacity as a High School Principal within Gooding School District No. 231; and GOODING SCHOOL DISTRICT NO. 321, a corporate and political subdivision of the State of Idaho, ) ) ) ) ) ) | |
| Defendants. ) ) | |

Pending before the Court in the above-entitled matter is Defendants' Motion for Summary Judgment (Docket No. 22). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Standard of Review**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear

MEMORANDUM ORDER - Page 1
06ORDERS\Howard_SJ

the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER - Page 2
06ORDERS\Howard_SJ

**Factual Background**

The facts generally are not disputed in this case. In the spring of 2002, Plaintiffs Derrick Howard, Alisha Sebastian and Tifini Stratton were among a group of students at Gooding High School who were pulled from class or not allowed to leave the school without being interviewed by school personnel and Mr. Kevin Cassidy. Mr. Cassidy, who was a magistrate judge at the time of the student interviews, came to Gooding High School on or about April 22, 2002 to meet with the Principal Gayle Yakovac regarding a hand-written copy of a flyer or note Mr. Cassidy received anonymously and that discussed his daughter Zoe Cassidy's alleged sexual activities on the internet.

The Principal realized the note Mr. Cassidy had in his possession was related to a stack of documents discovered in the parking lot by the school custodian which appeared to be a transcript of the handwritten note. The documents were discovered by the custodian approximately two months prior to Mr. Cassidy coming to the high school with the handwritten note. The Principal kept one copy of the documents and disposed of the other copies. The incident regarding the parking lot documents was investigated and it was determined Willy Mullins and Shamus Campbell, students of Gooding High School, had generated the handwritten note and that Zoe Cassidy took possession of the handwritten note. Plaintiffs claim the typewritten document was not generated at school, however, they do not dispute that copies of the typewritten transcript were discovered on school property.

Mr. Cassidy requested to interview students regarding the note he had received anonymously. The Principal agreed and arranged for Mr. Cassidy and another faculty member, Mr. Chris Comstock, to participate in the interviews which took place in the Principal's office. The Defendants maintain the interviews involved the dual issue of school disciplinary policy and possible violations of the law. The Principal was in and out of the interview room due to other school duties. Eight students were identified as individuals who may have information pertaining to the investigation of the note and these eight students were interviewed.

The Board of Education Series 400 school policy provides that when a student interview is requested during school hours on school premises by person other than "law enforcement officials or school personnel," the parent or guardian of the student to be interviewed shall be informed and

such parent or guardian has the right to refuse to allow the interview or may place conditions or restrictions on the interview. It is undisputed the school officials did not seek the permission of the respective parents or guardians prior to allowing the three Plaintiffs to be interviewed by Mr. Cassidy in the presence of other school officials.

The interviews involved questions regarding the note Mr. Cassidy had received as well as questions regarding a previous weekend when Mr. Cassidy had been out of town when his daughter Zoe was to stay at a friend's house. Rather than stay with the friend, Zoe went back to her house with Derrick Howard. Mr. Cassidy asked the three Plaintiffs about the sexual activities of his daughter and specifically asked Mr. Howard if he had sexual relations with his prior girlfriend and with Zoe Cassidy. First, Zoe was interviewed. Then the students who had written the note, Seamus Campbell and Willie Mullins were interviewed. Mr. Campbell and Mr. Mullins denied sending the note to Mr. Cassidy. Then three students mentioned in the note or who had read the note were called in to be interviewed. Finally, Derrick Howard was interviewed to see if he knew anything about the note sent to Mr. Cassidy. The Principal and Mr. Comstock did not believe completely truthful answers were given by the students to the questions posed by Mr. Cassidy. None of the students interviewed were disciplined by school officials as a result of the interviews.

Three of the students Mr. Cassidy interviewed filed this lawsuit asserting that the Principal and Gooding School District No. 231 ("School District") violated their rights by allowing and/or participating in the interviews. The lawsuit does not name Mr. Cassidy as a defendant. The Defendants deny the students' rights were violated by the interview process.

Plaintiff Tifini Stratton claims she suffered sleepless nights, headaches, weight gain and an increase in acne due to the stress of the interview. Derrick Howard alleges he suffered from headaches, an increase in frustration, and increase in fatigue and a loss of energy. Mr. Howard also had suicidal thoughts because he felt so bad after the interview. Mr. Howard did not return to Gooding High School the next school year. Alisha Sebastian avers she suffered from headaches and fatigue and that she was embarrassed and depressed due to the interview. The record reflects Ms. Sebastian was placed on antidepressant medication.

**Analysis**

1. <u>Federal Claims – 42 U.S.C. § 1983</u>

Plaintiffs' federal claims all involve alleged violations of 42 U.S.C. § 1983. Plaintiffs claim they were subjected to an unreasonable search and seizure, their privacy was invaded, their liberty interest in their reputation was violated and their property interest in education was violated. Defendants deny the students' constitutional rights were violated and argue the Principal is entitled to qualified immunity. The Court will address each theory of recovery under § 1983.

    A. <u>Section 1983 Law In General</u>

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992). To state a claim under § 1983 against the Principal or the superintendent, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. <u>Id.</u> Acting under color of state law is "a jurisdictional requisite for a § 1983 action." <u>West v. Atkins</u>, 487 U.S. 42, 46 (1988). Section 1983 is a remedial statute which does not create substantive rights, but rather provides a remedy for violations of rights created in the Constitution or other statutes. <u>Day v. Wayne County Bd. of Auditors</u>, 749 F.2d 1199 (6th Cir. 1984). Defendants concede Principal Yakovac was acting under color of state law when she allowed the Plaintiffs to be interviewed at school. Therefore, the question becomes, did the Principal's actions in allowing the interviews deprive the Plaintiffs of a right, privilege or immunity secured by the Constitution or federal law?

    B. <u>Unreasonable Search and Seizure</u>

Count I of the Complaint alleges Plaintiffs' constitutional rights were violated in the form of a depravation of a right to be secure from unreasonable searches and seizures as secured by the Fourth Amendment. It is undisputed that the students were not subject to searches of their persons or property. Accordingly, a claim based on an unreasonable search does not exist.

As to the seizure argument, the Fourth Amendment provides " a right of the people to be secure in their persons . . . against unreasonable searches and seizures. The Fourth Amendment applies to government conduct motivated by "investigatory or administrative purposes." Doe v. Hawaii Dept. of Education, 334 F.3d 906, 909 (9th Cir. 2003). A seizure is a "restraint on liberty to the degree that a reasonable person would not feel free to leave." Id. In school cases, the standard for restraining a person is less than probable cause. New Jersey v. T.L.O., 469 U.S. 325 (1985). The detention must be reasonably related to its purpose, and must not be "excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342. The reasonableness of the seizure must consider the educational objectives the school administrators are trying to achieve. Hawaii Dept. of Education at 909.

The Court finds genuine issues of material facts exist regarding whether the students were "seized" and their due process rights violated  The students state they did not feel free to leave when pulled out of class and taken to the Principal's office. Mr. Howard was called back into the school by Mr. Comstock when he was leaving the building. The students were aware of Mr. Cassidy's position as a judge in the community and it does not appear the students were advised they were free to leave if they did not want to answer questions. Mr. Cassidy asked the students if they knew what he did for a living. Also, it appears Mr. Cassidy arguably threatened prosecution of at least one of the Plaintiffs when the student would not answer a question. While the detention of the students may have been proper for investigatory or administrative purposes originally, taking the evidence in a light most favorable to the students, some of the questions had nothing to do with the note in Mr. Cassidy's possession and may have been beyond the scope of the school's interest or authority over the students. Further, at the time of the interviews by Mr. Cassidy, the Principal was already aware of who had written the note as the matter had been investigated a month or two earlier and it was determined the note at issue was written by Seamus Campbell and Willie Mullins but school computers were not used to transcribe the note and make the copies found in the parking lot.

Genuine issues of material fact also exist regarding whether the students also have a claim regarding their due process rights under the Fourteenth Amendment since the School District had a policy regarding interviews by non-school personnel.

Defendants maintain that the Principal is entitled to qualified immunity since she was performing a discretionary function. In order to determine if qualified immunity applies, "[t]the court must first determine whether "the facts alleged show the [official's] conduct violated a constitutional right': 'the next, sequential step is to ask whether the right was clearly established' – an inquiry that 'must be undertaken in light of the specific context of the case.'" Settlegoode v. Portland Public Schools, 371 F.3d 503, 518 at n. 7 (9th Cir. 2004). Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South 565, F.ed 1532, 1534 (9th Cir. 1992). "Finally, if the right was clearly established, [the court must] assess whether an objectively reasonable government actor would have known that his or her conduct violated the plaintiff's constitutional rights." Brown v. Li, 308 F.3d 939, 947 (9th Cir. 2002).

Assuming for purposes of this defense that genuine issues of material fact exist regarding whether the students were improperly seized and their due process rights violated, the Court will assume the Principal's actions violated their constitutional rights. Now, the Court needs to determine if the right to be free from unreasonable seizures was clearly established.

"While students do not 'shed their constitutional rights . . . at the schoolhouse gate,' . . . the Supreme Court has never held that the 'full panoply of constitutional rules applies with the same force and effect in the schoolhouse as it does in the enforcement of criminal laws.'" Edwards for and in Behalf of Edwards v. Rees, 883 F.2d 882, 884 (10th Cir. 1989) (citing Tinker v. Des Moines Ind. School Dist., 393 U.S. 503, 506 (1969). Even so, the Court finds the law in this area was clearly established. Doe Ex Rel Doe v. State of Hawaii Dept. Of Educ., 334 F.3d 906 (2003). Based on the case law in existence at the time of the interviews in 2002 and considering the fact that a seizure violates the Fourth Amendment if it is objectively unreasonable under the circumstances, the Court finds there are genuine issues of material fact regarding whether the Principal's decision to allow a parent to interview students without contacting parents was objectively unreasonable when considering the age and sex of the students as well as the nature of the alleged infraction of a note being sent to Mr. Cassidy and the fact school officials had previously investigated the note.

It appears from the record that Defendants admit the Principal did not follow the due process guidelines set forth in the School District's policies regarding notice to parents if someone other than

law enforcement or school officials are going to interview a student. The Defendants argue that Mr. Cassidy, as a sitting magistrate judge, was a law enforcement official and therefore the notice to the parents included in the School District policy was not applicable. The Court finds this argument unpersuasive.

A sitting judge is sworn to uphold the law, but a judge is not a "law enforcement official" who conducts investigations. The intent of the School District policy does not appear to include judges (who are present in their capacity as a parent and not as a judge) to be considered "law enforcement officials." Nor can the Principal abdicate her responsibilities to protect the students and follow district policies by claiming she deferred judgment of the appropriateness of the questioning to the magistrate judge. There was no court order allowing the interviews. Allowing the interviews was a decision by the Principal, not Judge Cassidy. A judge's robe does not follow the judge on personal matters. The school officials were present to limit the scope of the interviews and such officials do not get to blame the unlimited scope of the questioning on the parent who happens to also be a magistrate judge.[2] For these reasons, the defense of qualified immunity is not entitled to summary judgment.

In order to prevail in a § 1983 claims against the School District, each Plaintiff must establish:

> 1) they were deprived of their constitutional rights by the School District and its employees, acting under color of state law;
> 2) that the School District had policies or customs which amount to deliberate indifference to the constitutional rights; and
> 3) these policies or customs are the moving force behind the alleged constitutional violations.

Lee v. City of Los Angeles, 250 F.3d 668, 681-82 (9th Cir. 2001).

As to the School District, assuming the Fourth and Fourteenth Amendment rights of the students were violated, the question becomes did the School District have policies that amounted to deliberate indifference to the students' constitutional rights. The policy at issue in this case provided that notice would be given to the parents or guardian of students where a request was made to

---

[2] In holding the Principal responsible for allowing the interviews, the Court in no way condones the actions of Mr. Cassidy to use his position as a judge to threaten or intimidate high school students to answer questions about their interpersonal relationship or his daughter's interpersonal relationships and sexual activities.

MEMORANDUM ORDER - Page 8
06ORDERS\Howard_SJ

interview the student by someone other than a law enforcement or school official. This policy clearly attempts to protect the students from being subjected to interviews by third parties and would indicate the School District is not deliberately indifferent to having students interviewed by people other than law enforcement officials or school officials. The Plaintiffs have provided no evidence that the School District regularly disregards this interview permission policy even though in this particular case the Principal determined the policy did not apply as the magistrate judge could be considered a law enforcement official. While the Principal's determination regarding the status of Mr. Cassidy is not persuasive to this Court, the Plaintiffs have failed to carry their burden in establishing that the School District had a policy or custom of acting deliberating indifferent to the rights of students being detained and interviewed by third parties. Nor have Plaintiffs provided any evidence that the school board affirmed the Principal decision before the decision to allow the interviews was implemented. Therefore, this claim is dismissed as it relates to the School District.

C. Invasion of Privacy

Count II of the Complaint alleges Defendants violated Plaintiffs' liberty interest in personal privacy as secured by the due process clause of the Fourteenth Amendment. The well known case of Roe v. Wade, 410 U.S. 113, 153 (1978) articulated the right to privacy all citizens enjoy. The Supreme Court has recognized that school children have and expectation of privacy while at school, however, a student's privacy interest is "limited in a public school environment where the State is responsible for maintaining discipline, health and safety." Bd. of Education v. Earls, 536 U.S. 822, 830 (2002).

The Defendants argue that any invasion of the students privacy was done by Mr. Cassidy, not school officials. While it appears Mr. Cassidy did ask questions beyond the scope of the note he received, the school officials allowed and aided the questioning by Mr. Cassidy. Moreover, the school officials stated they had an investigatory interest in the questioning of the students so that any questions asked by Mr. Cassidy with Mr. Comstock present were also being effectively asked by school officials. School officials have not established a reasonable educational interest in asking

students about their interpersonal relationships and/or sexual activities away from school and whether Mr. Howard was having sexual relations with Mr. Cassidy's daughter.

The Court finds there exist genuine issues of material fact regarding whether the Principal violated the Plaintiff students' liberty interests and this cause of action shall be allowed to proceed. For the same reasons as discussed earlier, the Court finds the Principal is not entitled to summary judgment on her qualified immunity defense, but the School District is entitled to be dismissed from this § 1983 claim as Plaintiffs have failed to allege a school policy or custom was the moving force behind this alleged constitutional violation.

### D. Liberty Interest in Reputation

Plaintiffs claim in Count III their reputations were damaged by their participation in the interviews. In order for a plaintiff to establish an action under § 1983 for a violation of their liberty interest in a good reputation, the plaintiff must also show "the damage to his [or her] reputation also resulted in damage to some tangible interest entangled with his [or her] reputation, such as an employment interest." Edwards v. Rees, 883 F.2d 882, 885-886 (10th Cir. 1989). In the present case, none of the Plaintiffs have established damage to a tangible interest entangled with their reputations, so the claims must be dismissed.

### E. Property Interest in Education

Count IV of the Complaint alleges a § 1983 violation for depravation of Plaintiff Derrick Howard's property interest in education. A property interest in public education is subject to the due process clause of the Fourteenth Amendment. Goss v. Lopez, 419 U.S. 565, 574 (1975). In the present case, Mr. Howard claims he did not return to Gooding High School due to the Defendants' conduct. However, the record establishes that no student was disciplined as a result of the interviews. The Principal and the School District did nothing that prevented Mr. Howard from enrolling in school the fall of 2002. Accordingly, there can be no claim for a violation of a property interest in education when the School District took no action that prevented Mr. Howard from attending school. Therefore, this claim is dismissed.

MEMORANDUM ORDER - Page 10
06ORDERS\Howard_SJ

2. <u>Common Law Negligence Claims</u>

   A. <u>Simple Negligence</u>

Plaintiffs claim in Count V Defendants breached a duty of care to prevent unreasonable and foreseeable risks of harm to the student Plaintiffs and the Defendants were negligent by failing to take proper steps to protect the health and safety of the Plaintiffs. To establish a claim for negligence under Idaho law, the plaintiff must prove:

> (1) a duty, recognized by law, requiring the defendants to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage.

<u>Hanks v. Sawtell Rentals, Inc.</u> 133 Idaho 199, 203, 984 P.2d 122, 126 (1999).

The Court will assume, for purposes of the motion for summary judgment, that the School District has a general duty of care to prevent foreseeable harm to its students while the students are in the School District's custody. <u>Summers v. Cambridge Joint Sch. Dist.</u>, 139 Idaho 953, 956, 88 P. 3d 772, 775 (2004).

The Defendants argue to the extent the common law negligence tort claim is based on the alleged violation of the School District policy not to allow interviews of students by persons other than school officials or law enforcement officials without notice to the parent or guardian fails as a matter of law because the magistrate judge can be considered a law enforcement official. The Court has previously disagreed with the Defendants that the magistrate judge, at the school in his capacity as a parent, was acting as a law enforcement official when he conducted the interviews of 8 students, including the interview of his own daughter. Therefore, the Court finds there are genuine issues of material fact regarding whether the school officials and/o the School District breached its duty when it allowed Mr. Cassidy to interview certain students.

Defendants also argue Plaintiffs have failed to allege proximate cause of the damages to the interviews. The Court finds Plaintiffs have adequately set forth the interviews allowed by the Principal were the proximate cause of their damages and the simple negligence claim survives summary judgment. It will be up to a jury to determine if Plaintiffs have established sufficient causation at the time of the trial.

### B. Negligence in Training or Supervision

In Count VI, Plaintiffs claim Defendants breached a duty of reasonable care in the training and supervision of individuals under their care. Specifically, the School District allegedly failed to train school personnel, including the Principal, concerning the application of the School District's student interview policy. The Principal maintains she believed Judge Cassidy was acting as a law enforcement official at the time of the interviews. The Principal was aware of the policy regarding interviews of students and Plaintiffs have provided no evidence in response to the motion for summary judgment that support the allegation the School District failed to train the Principal or other school officials regarding the District's policy. This cause of action must be dismissed.

### C. Negligent Infliction of Emotional Distress

In Count VII, Plaintiffs allege Defendants breached a duty of care to prevent unreasonable, foreseeable risks of harm to others and as a result of the breach, Plaintiffs suffered emotional distress.

Idaho law requires "any claim for damages for negligent infliction of emotional distress be accompanied with objective physical manifestations before any such claim is cognizable." Czaplicki v. Gooding Joint School District No. 231, 116 Idaho 326, 331, 775 P.2d 640, 645 (1989). "The 'physical injury' requirement is designed to provide some guarantee of the genuineness of the claim in the fact of the danger that claims of mental harm will be falsified or imagined." Id. (citing Hatfield v. Max Rouse Sons Northwest, 100 Idaho 840, 849, 606 P.2d 944, 953 (1980).

Defendants argue that the physical manifestations set forth by Plaintiffs are related to collateral issues such as the filing of the lawsuit and not the interviews by Mr. Cassidy and there is "no evidence" the students suffered physical injury. The Court, in viewing the facts in a light most favorable to the non-moving party finds Plaintiffs' alleged physical manifestations can arguably be linked to the interviews as well as collateral issues. Because genuine issues of material fact exist on this claim, summary judgment must be denied.

3. <u>Intentional Tort Claims</u>

    A. <u>Intentional Infliction of Emotional Distress</u>

Plaintiffs claim in Count VIII, Defendants intentionally and/or recklessly committed extreme and outrageous conduct towards Plaintiffs allowing the students to be interviewed and as a result of said interviews, Plaintiffs suffered severe emotional distress.

"In Idaho, four elements are necessary to establish a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be 'severe.'" <u>Edmondson v. Shearer Lumber Products</u>, 139 Idaho 172, 179, 75 P.3d 733, 740 (2003) (citing <u>Curits v. Firth</u>, 123 Idaho 598, 601, 850 P.2d 749, 751 (1993). Defendants claims based on the undisputed facts no reasonable trier of fact could find Principal Yakovac's acted with intentional or reckless conduct, or that the Principal's actions were extreme and/or outrageous. Plaintiffs have failed to come forward in their response to the motion for summary judgment with facts demonstrating "extreme and outrageous conduct." <u>See Estate of Becker v. Callahan</u>, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004). Based on this determination, the Court need not reach the issue of whether or not the alleged emotional distress is "severe" and this claim against the Defendants must be dismissed.

    B. <u>Intentional Invasion of Privacy</u>

In Count IX, Plaintiffs allege Defendants intentionally invaded their privacy by allowing an intrusion upon seclusion and public disclosure of embarrassing private facts. Defendants maintain the intrusion was proper based on the need to investigate the note and that there was not a public disclosure of any private facts.

There are two categories of invasion of privacy applicable to the case at bar recognized in Idaho: intrusion upon the plaintiff's seclusion or solitude, or into his private affairs and public disclosure of embarrassing private facts about the plaintiff. <u>See</u> <u>Hoskins v. Howard</u>, 132 Idaho 311, 316, 971 P.2d 1135, 1140 (1998). The Court will first analyze the intrusion claim. The elements for intrusion upon seclusion are: (1) the matter must be private and not publicly known; (2) the matter

must be entitled to be private; and (3) the intrusion must be offensive to a reasonable person. Id. at 317, 1141. Plaintiffs have failed to carry their burden to survive the summary judgment motion on this cause of action. First, Plaintiffs merely argue the facts set forth a genuine issue of material fact exists as to each element of this claim. This statement without further explanation of what facts in the record support the intrusion claim is not helpful to the Court. Second, the note in this case was not discussed publicly by school personnel, but by other students. There is nothing in the record to establish the incident regarding the note was not already known in the school. Plaintiffs Tifini Stratton and Alisha Sebastian were questioned since they had previously read the note in the locker area and knew facts about Zoe's conduct when her father was out of town. Plaintiffs have not established the fact Plaintiffs had read the note was entitled to be private as the school officials had an interest in school disciplinary rules and use of school computers for improper purposes. The intrusion about their knowledge of the note and what Zoe did on one weekend, does not appear offensive to a reasonable person. Third, Plaintiffs have failed to establish the actions of the Defendants were undertaken to intentionally intrude upon Plaintiffs and not for some legitimate school purpose. This cause for intentional intrusion must be dismissed.

The elements for public disclosure of private facts are: (1) there must be a public disclosure; (2) the facts disclosed must be entitled to be private; and (3) the disclosure must be such that it is offensive and objectionable to a reasonable person. Id. Plaintiffs have failed to set forth facts via deposition testimony or affidavits that the Defendants publicly disclosed any private facts to anyone after the interviews. It appears the students who were interviewed may have discussed the interviews with their parents and other students, but there is no evidence the Defendants made any information discovered during the interviews public. This intentional tort claim must be dismissed as Plaintiffs have failed to carry their burden to establish that genuine issues of material fact exist regarding the disclosure of private facts.

### C. False Imprisonment

Plaintiffs aver in Count X they were falsely imprisoned when they were taken out of class to be interviewed without adequate justification. The Court finds the note being sent to a parent was

justification for investigation by school officials. Moreover, the Defendants are immune for liability for their actions of interviewing the students under Idaho Code § 6-904 which provides:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . arises out of false imprisonment.

The record is void of any evidence that the Defendants were acting with malice or criminal intent when pulling the students from class to be interviewed. As a matter of law, this claim is dismissed.

4. <u>Statutory Claims</u>

    A. <u>Idaho Code § 33-512(11) and § 33-512)4)</u>

Plaintiffs allege in Counts XI and XII that Defendants breached a duty of care to prohibit or remove Judge Cassidy who was disruptive to the educational process and health and safety of the students in violation of Idaho Code § 33-512(11) and § 33-512(4). The Idaho Supreme Court has determined these statutes do not create a new tort or new cause of action. <u>See</u> <u>Coonse v. Boise School Dist.</u>, 132 Idaho 803, 807, 979 P.2d 1161, 1165 (1999). Idaho Code § 33-512 does not create a statutory negligence per se duty on the Defendants separate from the general common law duty of care for school children under their care and supervision. <u>Hei v. Holzer</u>, 139 Idaho 81, 88, 73 P.3d 94, 101 (2003). Therefore, the statutory causes of action set forth in Plaintiffs' complaint must be dismissed as a matter of law.

**Order**

Being fully advised in the premises, the Court hereby orders that Defendants' Motion for Summary Judgment (Docket No. 22) is GRANTED IN PART AND DENIED IN PART:

    1.    Summary judgment is GRANTED in favor to all Defendants on Counts III, IV, VI, VIII, IX, X, XI, and XII and such counts are DISMISSED IN THEIR ENTIRETY.

2. Summary judgment is GRANTED in favor of the School District on Counts I and II and such counts are DISMISSED as to the School District.

3. Summary judgment is DENIED on Counts I and II, as to the Principal; Counts V and VII as to all Defendants, and therefore, these remaining claims shall proceed to trial on May 16, 2006 in Boise, Idaho.

DATED: **May 2, 2006**

Honorable Edward J. Lodge
U. S. District Judge